**FILED**

OCT 2 7 2008

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BONNIE SHEELER, | ) | CR. 06-40022-AWB |
| | ) | [CIV. 08-4093] |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondant. | ) | |
| | ) | |

This matter is before the court pursuant to petitioner Bonnie Sheeler's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255.[1] Respondent the United States of America ("government") opposes the motion. This matter was referred to this magistrate judge for a report and recommendation by the Honorable Andrew W. Bogue, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). The court recommends denying Ms. Sheeler's motion in part and granting an evidentiary hearing as to one issue for the reasons discussed below.

---

[1]Although Ms. Sheeler's motion was docketed in a separate case with a civil number, civ. 08-4093, that case was opened for statistical purposes only. All citations to docket numbers in the body of this opinion are to the criminal case, CR. 06-40022.

1

## FACTS

Ms. Sheeler was indicted along with co-defendant Mariano Castro on March 23, 2006, for a single count of conspiring to distribute and possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Attorney Michael W. Hanson represented Ms. Sheeler in pretrial proceedings and also at her jury trial, which took place on June 27 and 28, 2006.[2]

A three-part verdict form was submitted for the jury's consideration.  The verdict first asked the jury to determine whether Ms. Sheeler was guilty or not guilty of the crime of conspiring to distribute 100 kilograms or more of marijuana.  The verdict form then instructed the jury, "[i]f you unanimously find Defendant Bonnie Sheeler guilty of the above crime, do not consider Verdicts Two and Three and have your foreperson sign and date the Verdict Form.  If you unanimously find Defendant Bonnie Sheeler not guilty of the above crime, you must then consider" Verdict Two.  See Docket No. 46.  Verdict Two gave the jury the option of finding Ms. Sheeler guilty or not guilty of the

---

[2]Although Ms. Sheeler's codefendant, Mariano Castro, was initially apprehended in Arizona, he subsequently absconded and has never appeared on this indictment in the District of South Dakota.  For that reason, Ms. Sheeler was tried alone.  For this same reason, the docket in this case remains under seal.  This opinion, too, will be filed under seal.  The court notes that even though this case was filed under seal, Ms. Sheeler has had access to all the relevant materials needed to support her motion as evidenced by her pleadings and citation to the record.

offense of conspiracy to distribute more than 50 kilograms but less than 100 kilograms of marijuana.  Id.  At the end of Verdict Two, the verdict form similarly told the jury that, if they unanimously found Ms. Sheeler not guilty on Verdict One and Verdict Two, they should go on to consider Verdict Three.  Id. Verdict Three gave the jury the option of finding Ms. Sheeler guilty or not guilty of conspiring to distribute less than 50 kilograms of marijuana.  Id.  The jury returned a verdict of guilty on June 28, 2006, as to Verdict One and, according to the instructions on the verdict form, did not consider Verdicts Two or Three. Id.

The record includes a July 26, 2006, letter from Ms. Sheeler to Judge John B. Jones, the Senior United State District Judge who presided over her trial, indicating that her attorney, Mr. Hanson, had not been to visit her since the trial concluded and would not return her phone calls.  On September 8, 2006, attorney John A. Schlimgen made a notice of appearance on behalf of Ms. Sheeler.  Mr. Hanson subsequently made a motion to withdraw as her attorney, which motion the court granted.

Ms. Sheeler was sentenced on October 10, 2008.  Mr. Schlimgen raised 12 separate objections to the pre-sentence report ("PSR") prepared by the

United States Probation Office in anticipation of the sentencing hearing.  Those objections were as follows:[3]

1.   Objection to any facts that suggest or assume or indicate that the defendant is guilty of the crime she's convicted of.  Mr. Schlimgen explained that this was a "general objection" so as to prevent the Eighth Circuit from holding on appeal that the failure to object to facts indicative of the defendant's guilt would result in the court accepting as true those facts.  The court denied this objection.

2.   Objection to ¶ 14 of the PSI that Ms. Sheeler sent money to co-defendant Castro via Western Union.  The government responded that witnesses at trial testified that they gave Ms. Sheeler cash for marijuana when she was working with Castro and that evidence was introduced that Ms. Sheeler used Western Union to send the money to Castro because the sales were occurring in South Dakota and the marijuana was being obtained in Arizona.  The court denied this objection.

3.   Objection to ¶ 16 on the basis that the general verdict form did not indicate concretely when Ms. Sheeler became involved in the conspiracy.  The government responded that evidence at trial showed that in 1998

---

[3]All of the objections made by Mr. Schlimgen, the discussion of the same by both Mr. Schlimgen and the government, and the court's ruling on the objections, are taken from the transcript of the sentencing hearing found at Docket No. 78.

Ms. Sheeler introduced Ken Heiser to one of the co-conspirators, that in 2001 Ms. Sheeler made a wire transfer with her name on the transfer, and testimony at trial indicated that Ms. Sheeler became involved in the conspiracy when she lived in South Dakota and before she moved to Arizona, which was in 2001.  Therefore, several sources of evidence show Ms. Sheeler's involvement prior to 2001.  The court denied this objection.

4.    Objection to paragraphs ¶¶ 18, 23, 28, and 31 which indicated that Ms. Sheeler should be sentenced based on 100 kilograms of marijuana. Mr. Schlimgen cited <u>United States v. Stiger</u>, 413 F.3d 1185 (10th Cir. 2005), for the proposition that the jury's verdict simply sets a ceiling on sentencing as to drug quantity, but that it is still incumbent upon the sentencing court to determine the exact amount of drugs a defendant was involved with for purposes of sentencing.  The government responded that the evidence at trial showed that Ms. Sheeler was involved in trafficking much more marijuana–100 to 400 kilograms–than indicated by the jury verdict.  The government stated that it had stipulated to 100 kilograms for sentencing purposes because there was a mandatory minimum sentence that applied of 60 months incarceration. The district court denied the objection.

5.    Objection to ¶ 31 setting forth a Total Offense Level of 24, which was the same objection set forth in objection number 4 based upon the amount

5

of marijuana.  The district court denied the objection, noting that because of the way the jury verdict was structured, it was clear that the jury found Ms. Sheeler had been involved in the distribution of at least 100 kilograms, otherwise, the jury would have found her guilty of Verdict Two (more than 50 but less than 100 kilograms) or Verdict Three (less than 50 kilograms).

6.    Objection to ¶ 34 attributing one additional Criminal History point to Ms. Sheeler.  Mr. Schlimgen argued that the jury verdict did not clearly show that the jury found Ms. Sheeler guilty of a specific amount of marijuana and also that the verdict did not specify the date that the jury found Ms. Sheeler had joined the conspiracy.  Mr. Schlimgen argued that the Western Union documents contained only a typed-in name, not Ms. Sheeler's signature.  He further noted that Western Union does not require the sender to present identification, only the recipient of the wire is required to present identification.  The district court denied this objection.

7.    General objections to paragraphs 35 and 36, orally amended during the hearing to be objections to paragraphs 37 and 38.  The district court denied this objection.

8.    Objections to paragraphs 40, 41, & 42 alleging that Ms. Sheeler was charged with acting belligerent at a restaurant.  Mr. Schlimgen stated

6

that these paragraphs do not impact the guidelines sentencing calculation at all, but that he was objecting because of impact these paragraphs may have on how the Bureau of Prisons classified Ms. Sheeler and other post-incarceration issues. In addition, he argued that Ms. Sheeler was acquitted of the charge. The government stated that the PSR reflected Ms. Sheeler's version of these events. The district court denied the objection.

9.   This objection had to do with something about Ms. Sheeler's employment. The objection was resolved by the probation officer by amending the PSR, thus rendering the objection moot.

10.  Objection to ¶¶ 67, 68, 72, and 73 based on the same argument raised in objection 4, that is, that the jury's verdict sets 100 kilograms as a ceiling and that the district court still has to make finding as to the exact amount Ms. Sheeler was responsible for. The court denied the objection, noting that the jury's finding of 100 kilograms was supported by the evidence and that if the court were to sentence based on a reduced level, the court would be, in effect, throwing out the jury's verdict.

11.  Mr. Schlimgen objected that Ms. Sheeler was not able to pay a fine. Court agreed and indicated that no fine would be imposed.

12.  Objection based on disparity of sentences among co-defendants, citing United States v. Krutsinger, 449 F.3d 827 (8th Cir. 2006). Mr. Schlimgen

argued that a co-defendant, Hedman, received a mandatory minimum sentence of 60 months, but was responsible for 10 times as much marijuana as Ms. Sheeler.  Mr. Schlimgen also argued that Hedman was going to be the beneficiary of a Rule 35 motion and predicted an ultimate sentence for Hedman of 30 months.  He then argued that 30 months for Hedman and 60 months for Ms. Sheeler, who moved 1/10 as much marijuana, was disproportionate.

The government responded that <u>Krutsinger</u> was inapposite because it involved one defendant who cooperated first and a second who also cooperated, but there was no new information for the second defendant to provide to the government.  Here, the government pointed out that Ms. Sheeler never cooperated and that the government never prevented her from cooperating.  The government also stated that Ms. Sheeler's sentencing range was 60-71 months.  Hedman's sentence was 60 months.  Even if Ms. Sheeler got the maximum sentence under the guidelines calculation, that would establish an 11-month difference between the two codefendants' sentences, which is not a difference of constitutional proportions.

The court denied the objection for two reasons.  First, it distinguished the case from <u>Krutsinger</u> because there was an applicable mandatory minimum sentence that applied in this case.  In addition, the court noted

8

that Ms. Sheeler had already received a two-point reduction in her total offense level because of her mitigating role in the conspiracy.

After addressing all the objections, the court found that Ms. Sheeler's offense level was 24, her criminal history category was II, her sentencing range under the guidelines was 60 to 71 months, and she was subject to a special assessment of $100.

Three witnesses testified for Ms. Sheeler at her sentencing hearing: John Edmundson, Charlotte Edmundson, and Ms. Sheeler's mom, Ms. Metville. The nature of the testimony given was to establish Ms. Sheeler's good character and to ask the court for mercy. After expressing regret that Congress saw fit to create a mandatory minimum sentence of 60 months imprisonment in this case, the district court sentenced Ms. Sheeler to 60 months' imprisonment, 4 years supervised release, and a $100 special assessment.

A notice of appeal was timely filed three days after sentencing. On appeal, Mr. Schlimgen raised the issue of the district court's admission into evidence of two co-conspirator statements. See United States v. Sheeler, No. 06-3617 (8th Cir. July 5, 2007) (unpublished). In a three paragraph *per curiam* opinion, the court held it was not an abuse of discretion to admit the statements, noting that a trial court has particularly broad discretion in evidentiary rulings in a conspiracy trial. Id. (citing Fed. R. Evid. 801(d)(2)(E); United States v. Mahasin, 362 F.3d 1071, 1084 (8th Cir. 2004); United States v.

9

Dierling, 131 F.3d 722, 730 (8ᵗʰ Cir. 1997)). Rehearing *en banc* was subsequently denied by the court. No petition for certiorari to the United States Supreme Court was filed.

Ms. Sheeler filed the instant motion on June 20, 2008. Thus, this case was filed within the one-year statute of limitations for bringing a petition for habeas relief. See 28 U.S.C. § 2255(f).

## DISCUSSION

Many of Ms. Sheeler's grounds for habeas relief allege that her counsel was ineffective. The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show, "there is a

10

reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Id.  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

**B.      Ground One–the District Court Erred in Considering the Western Union Wire Transfer Documents to Establish the Commencement of Ms. Sheeler's Participation in the Conspiracy**

In support of this ground, Ms. Sheeler indicates that she wished to raise the issue on appeal as to whether the district court abused its discretion in admitting the Western Union documents.  She indicated that Mr. Schlimgen did not agree with her that this was a meritorious issue to raise in the appeal. It is unclear whether Ms. Sheeler is complaining about the admission of the Western Union documents at her trial, or whether she complains about the consideration of those documents by the district court at sentencing.  Neither argument is meritorious.

At issue are several documents from Western Union as to the origination of various wire transfers.  The documents bear Ms. Sheeler's type-written name and her correct home address.  On two of the documents, Ms. Sheeler's name is misspelled.  In one instance, the last letter of her name was typed with an "e" instead of an "r."  See TT at 11, lines 14-21.  In another instance, Ms. Sheeler's name was spelled "Scheeler."  Id. at 12, lines 4-12.  The documents indicate that the recipient of the wire transfers was Mr. Castro, Ms. Sheeler's co-defendant in this drug conspiracy case.

At trial, Ms. Sheeler's lawyer, Mr. Hanson, stipulated as to the foundation for these documents and he also did not object to their admission

into evidence.  See TT at 8, lines 12-17.  The earliest of these wire transfers

bears a date of December, 2001.  Id. at 9, lines 1-13.

Ms. Sheeler argues that the Western Union documents should not have

been considered as evidence against her because they do no bear her

signature, Western Union does not require the sender of a wire transfer to

present identification when initiating a transfer, and the misspellings of her

name indicate that it was not, in fact, Ms. Sheeler who sent the transfers.  All

of these grounds was covered by Mr. Hanson in his cross-examination of the

witness through whom the documents were admitted at trial.  See TT at 13,

lines 10-25; 14, lines 1-15.  Furthermore, Ms. Sheeler denied that she had sent

the transfers during her testimony at trial.

As to the admission of these documents at trial, the court concludes that

Ms. Sheeler cannot show prejudice as required by Strickland.  First, the court

notes that these documents appear to be relevant and, thus admissible, with

any arguments about their authenticity going to the weight of the evidence,

rather than its admissibility.  See Fed. R. Evid. 401, 403; Craig Outdoor

Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001 (8th Cir. 2008).

Moreover, the trial transcript is replete with other, more direct evidence

of Ms. Sheeler's participation in this drug conspiracy separate and apart from

the Western Union documents.  Michael Hedman testified at the trial that he

was a "mule" for Mr. Castro and that he was involved in drug transactions with

13

Mr. Castro where Ms. Sheeler was present on at least 4 or 5 occasions,
beginning in the fall of 2003.  See TT at 19, lines 18-25; 20, lines 1-25; 21,
lines 1-25; 22, lines 1-11; page 27, lines 22-25; 28, lines 1-25.   Mr. Hedman
testified that Mr. Castro told Mr. Hedman that Ms. Sheeler was his assistant
and that she could be trusted.  Id.  On one occasion, Mr. Hedman described
dropping drug money off with Ms. Sheeler directly at the request of Mr. Castro
at a hotel room to which Mr. Castro directed Mr. Hedman.  See TT at 29, lines
11-25; 30, lines 1-25; 31, lines 1-25; 32, lines 1-25; 33, lines 1-25.  On other
occasions, Ms. Sheeler gave Mr. Hedman directions on how to reach a meeting
place with she and Mr. Castro.  See TT at 34, lines 1-23.  On another occasion,
Mr. Hedman came to a hotel room where both Mr. Castro and Ms. Sheeler were
present and sampled some of the product.  TT at 29, lines 11-25; 30, lines 1-
25; 31, lines 1-25; 32, lines 1-25; 33, lines 1-25.

If it was error to admit the Western Union documents, such error was
harmless in the face of the other, more compelling direct evidence of
Ms. Sheeler's involvement in this drug conspiracy.  Under Strickland,
Ms. Sheeler must show, "there is a reasonable probability that, absent the
errors, the factfinder would have had a reasonable doubt respecting guilt."
Strickland, 466 U.S. at 695.  Here, there was ample other evidence of
Ms. Sheeler's guilt.  She cannot show that, absent the Western Union
documents, the factfinder would have had a reasonable doubt respecting her

14

guilt. Therefore, this argument must fail because Ms. Sheeler has failed to establish prejudice.

If Ms. Sheeler's argument is that the district court should not have considered the Western Union documents for sentencing purposes, this argument is likewise unavailing. As the government pointed out in argument at sentencing, there was other evidence of Ms. Sheeler's involvement in this drug conspiracy dating back to 1998, which was before the December 2001 Western Union documents. Again, if it was error for the district court to consider these documents, such error was harmless as other evidence established Ms. Sheeler's participation in the conspiracy at dates earlier than that established by the Western Union documents. Ms. Sheeler cannot show that she was prejudiced by this error.

**C.   Ground Two–the Evidence was Insufficient to Show that Ms. Sheeler Knowingly or Intentionally Agreed to Join, Further, or Help the Conspiracy Succeed**

In support of this ground, Ms. Sheeler indicates that she wished to raise the issue on appeal as to whether there was sufficient evidence at trial to show that she knowingly joined the conspiracy. She indicated that Mr. Schlimgen did not agree with her that this was a valid issue to raise on appeal.

Sufficiency of the evidence arguments are reviewed on appeal on a *de novo* basis, "viewing the evidence in the light most favorable to the verdict and giving it the benefit of all reasonable inferences." See United States v. Chahia,

___ F.3d ___, 2008 WL 4552950, at *1 (8th Cir. October 14, 2008).  The appellate court will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.  Given just the testimony from Michael Hedman, discussed above, there was sufficient evidence from which a reasonable jury could have concluded that Ms. Sheeler knowingly and intentionally joined the conspiracy.  Hence, there is no reason to believe that this argument, had it been raised on appeal, would have succeeded.  Given the presumption that Mr. Schlimgen's refusal to raise this issue "was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment," Hall, 296 F.3d at 692, and given the fact that there is no likelihood that the argument would have been successful on appeal, again Ms. Sheeler's argument fails because she cannot show prejudice.

**D.    Ground Three–the Verdict Choices Were Incomplete**

In support of this ground, Ms. Sheeler indicates that she wished to raise the issue on appeal as to whether the verdict form was fatally flawed.  She indicated that Mr. Schlimgen did not agree with her that this was a valid issue to raise on appeal.

Ms. Sheeler does not elaborate on her basis for this argument, either in her § 2255 motion or the accompanying materials.  However, the court gathers that she believes that the jury was not given the opportunity to acquit her.  A

simple examination of the jury verdict form in this case refutes Ms. Sheeler's argument.

The verdict form asked the jury to consider whether Ms. Sheeler was guilty or not guilty of three separate crimes: (1) conspiracy to distribute 100 kilograms or more of marijuana; (2) conspiracy to distribute at least 50 kilograms but less than 100 kilograms; and (3) conspiracy to distribute less than 50 kilograms.  See Docket 47.  If the jury believed that Ms. Sheeler was innocent of all charges, it need only have checked the "not guilty" blank on each charge and returned the signed verdict to the court.  Id.  Obviously, the jury found otherwise.  No fault can be found with the verdict form itself. Accordingly, it was not error to fail to raise this issue on appeal and no Strickland violation can be shown.

**E.    Ground Four–the Court Erred by Not Making An Independent Determination at Sentencing of the Date Ms. Sheeler Joined the Conspiracy and the Amount of Marijuana Attributable to Her**

In support of this ground, Ms. Sheeler indicates that she wished to raise the issue on appeal as to whether the district court erred at sentencing by not making an independent finding as to the date Ms. Sheeler joined the conspiracy and the amount of marijuana attributable to her.  She indicated that Mr. Schlimgen did not agree with her that this was a valid issue to raise on appeal.

17

First, the issue of the date on which Ms. Sheeler joined the conspiracy has already been addressed in the context of the argument regarding the Western Union documents. There was direct testimony setting forth the dates on which Ms. Sheeler became an active participant in this drug conspiracy and the dates preceded the earliest of the Western Union documents. The district court, through its adoption of the PSR, made a determination as to the date Ms. Sheeler joined the conspiracy.

Ms. Sheeler's argument regarding the district court's failure to independently determine the *amount* of drugs she was responsible for are based on a Tenth Circuit case cited by Mr. Schlimgen at sentencing, United States v. Stiger, 413 F.3d 1185 (10th Cir. 2005). As is revealed by a discussion of Stiger, the district court acted in conformity with, not in violation of, the rule set forth in that case.

In Stiger, the defendant was tried in a drug conspiracy case with several co-defendants in the same conspiracy. Id. at 1189. On appeal, Stiger argued that the jury verdict simply set the total amount of drugs attributable to the conspiracy as a whole, the "ceiling," but that it was incumbent upon the

district court, under <u>Apprendi</u> and <u>Booker</u>,[4] to independently determine the amount of drugs that Stiger himself was personally responsible for, which Stiger argued was far less. <u>Id.</u> at 1191-1192. The total amount of drugs attributable by the jury to the conspiracy as a whole was such that it triggered a mandatory term of life imprisonment without release. <u>Id.</u> at 1192. The district court had sentenced Stiger to this mandatory life sentence. <u>Id.</u>

The Tenth Circuit rejected Stiger's argument. First, the court noted that the evil against which <u>Apprendi</u> and <u>Booker</u> were directed was judge-found facts which *increased* a defendant's sentence beyond the statutory maximum. <u>Id.</u> at 1191-1193. Here, the "statutory maximum" was the amount found by the jury to be attributable to the conspiracy as a whole. <u>Id.</u> While it would have been error under <u>Apprendi</u> and <u>Booker</u> for the district court to sentence Stiger to a sentence *higher* than that set by the jury, it was not a constitutional error to refuse to sentence Stiger to a sentence *lower* than that set by the jury. <u>Id.</u> In addition, the court noted that even if the district court "erroneously found facts and mandatorily applied the Guidelines," such error was harmless

---

[4]<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); <u>United States v. Booker</u>, 543 U.S. 220 (2005). Together, the decisions in <u>Apprendi</u> and <u>Booker</u> established the proposition that any fact which serves to increase a defendant's sentence beyond the statutory maximum must be found by a jury, rather than a judge, because to allow a judge-found fact to increase a defendant's sentence beyond the statutory maximum violates a defendant's Sixth Amendment right to a jury trial.

beyond a reasonable doubt where, as here, there was a mandatory minimum sentence that applied. Id. at 1193.

The district court in Ms. Sheeler's case correctly read and applied Stiger.[5] First of all, a major fact that distinguishes the Stiger case from Ms. Sheeler's case is that Ms. Sheeler was tried alone–no other co-defendants were tried with her. Therefore, while Stiger could argue that the amount found by the jury was not the amount he personally was involved with, in Ms. Sheeler's case, the presumption that the amount the jury found is the amount directly attributable to Ms. Sheeler is strengthened because she was the only one on trial.

Moreover, in this case, as in Stiger, the district court sentenced Ms. Sheeler to a sentence commensurate with the amount found by the jury. It did not sentence Ms. Sheeler to a sentence which was greater than that justified by the amount of drugs found by the jury. Accordingly, no Sixth Amendment violation under Booker can be established. Like the Tenth Circuit, the district court was correct to reject Ms. Sheeler's argument based on the Stiger case.

--------

[5]The Stiger decision is from the Tenth Circuit, not the Eighth Circuit, and therefore was not binding precedent which the district court in Ms. Sheeler's case was bound to adhere to. Nevertheless, this court discusses Stiger because the district court's decision was not contrary to that decision.

Finally, the court notes that in Ms. Sheeler's case, as in the <u>Stiger</u> case, a mandatory minimum sentence applied based on the amount of drugs found by the jury.  Accordingly, any error which may have been committed by the district court was harmless as a matter of law.  <u>Stiger</u>, 413 F.3d at 1193.

Because there was no legal error committed by the district court in Ms. Sheeler's case, there was no error committed by Mr. Schlimgen in failing to raise this argument on appeal and no prejudice under <u>Strickland</u>.

**F.    Ground Five–the Court Erred in Calculating Ms. Sheeler's Criminal History Category**

Ms. Sheeler argues that the court should not have added a point to her criminal history calculation for a 1992 drug paraphernalia charge nor for a 1997 charge of driving while under the influence.  Ms. Sheeler, citing to <u>Rita v. United States</u>, ___ U.S. ___, 127 S. Ct. 2456 (2007), argues that "any crime that is close to or more than 10 years old" should not be counted against a defendant in calculating criminal history.

Ms. Sheeler was sentenced October 10, 2006.  Therefore, her 1997 conviction was nine years prior to sentencing.  Ms. Sheeler represents that she received a sentence of 30 days in jail, suspended with no probation for the 1997 DUI offense.  Ms. Sheeler's 1992 drug paraphernalia conviction, for which she represents that she received a sentence of 5 days in jail, suspended with no probation, was outside the 10-year period Ms. Sheeler argues bound the district court.

21

Initially, the court notes that the <u>Rita</u> decision did not involve resolution of the issue raised by Ms. Sheeler.  Rather, the opinion merely stated, in setting forth the contents of Rita's PSR, that Rita had had a 1986 conviction for making a false statement in connection with the sale of firearms, but that this conviction did not result in any criminal history points being calculated against Rita because the conviction took place more than 10 years before the offense Rita was then facing.  <u>Rita</u>, ___ U.S. at ___, 127 S. Ct. at 2460-2461.  This was never a contested issue before the Court.

The court also notes that Ms. Sheeler's argument results from a misreading of the USSG.  Those statutes provide that the ten-year look-back provision for calculating a defendant's criminal history points begins on the date that the current offense was commenced.  <u>See</u> USSG § 4A1.2(e)(2).  Evidence at trial showed that Ms. Sheeler introduced Ken Heiser into the conspiracy in 1998, thus placing her commencement of this offense at least at 1998.  Both of Ms. Sheeler's convictions about which she complains occurred within the 10-year look-back time frame of 1988-1998.

Finally, the court notes that Ms. Sheeler was subject to a minimum mandatory sentence of 60 months incarceration in this case due to the amount of marijuana she was convicted of distributing.  <u>See</u> 21 U.S.C. § 841(b)(1)(B)(vii).  This moots Ms. Sheeler's argument about how her criminal history points were calculated.  If she had received zero criminal history points

22

and was accordingly placed in criminal history category I, the lowest level, her sentencing range using an adjusted offense level of 24 under the USSG would have been 51-63 months. The statutory mandatory minimum required a sentence of 60 months, which is what the district court gave her and which was within the USSG range she claims she was entitled to. Accordingly, Ms. Sheeler cannot show prejudice. Had Mr. Schlimgen raised this issue on appeal, even if he had been successful on appeal, Ms. Sheeler cannot show that her sentence would have been different.

**G.    Ground Six–the Court Should Have Applied the Safety Value so as to Sentence Ms. Sheeler to a Term of Incarceration Below the Mandatory Minimum**

Ms. Sheeler asserts that she was eligible to be sentenced to a term of imprisonment less than the mandatory minimum through application of the "safety valve" at 18 U.S.C. § 3553(a) and USSG § 5C1.2. Ms. Sheeler argues that the court denied her safety valve relief because she availed herself of her right to a jury trial as guaranteed by the Sixth Amendment. She asserts that this violates her rights under the Sixth Amendment.

In order to qualify for the safety value under § 3553(f), a defendant must meet five qualifications:

1.    the defendant does not have more than 1 criminal history point;

2.    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon;

23

3.     the offense did not result in death or serious bodily injury to any person;

4.     the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . under the Controlled Substances Act; and

5.     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense.

<u>See</u> 18 U.S.C. § 3553(f).

Ms. Sheeler did not meet the first element required to be eligible for the safety value and the court has already rejected her argument that the district court erred in calculating her criminal history points.  In addition, Ms. Sheeler did not meet the last element.

Contrary to Ms. Sheeler's argument that she was deprived of the application of the safety value to her because she availed herself of her right to a trial, the language of § 3553(f) clearly signals that a defendant can provide truthful information to the government at any time prior to the sentencing hearing.  <u>See</u> 18 U.S.C. § 3553(f)(5); <u>United States v. Tournier</u>, 171 F.3d 645, 647 (8th Cir. 1999) (stating that defendants who have put the government to the expense and burden of a jury trial can nevertheless qualify for safety valve relief under § 3553(f) by providing truthful information after the trial and before sentencing).

24

Here, Ms. Sheeler's trial concluded at the end of June and she was not sentenced until October 10, 2006.  She had three and a half months in which she could have contacted the government to provide the information that would have made her eligible for the safety valve.  She did not do so.[6]  There is no evidence in the record to support her allegation that the district court refused to apply the safety value to her because she had a jury trial.

Since Ms. Sheeler herself deprived herself of the applicability of the safety value statute at sentencing, it was not error for the district court to fail to apply that safety value statute, and she was not prejudiced by Mr. Schlimgen's failure to raise the issue on appeal on her behalf.

## H.   Ground Seven–the Court Should have Awarded Ms. Sheeler a Four-Point Reduction in her Offense Level Under the Guidelines and a Downward Departure

Ms. Sheeler argues that she should have been given a four-point reduction under USSG § 3B1.2(a) rather than the reduction she was given

---

[6]Ms. Sheeler asserts that her testimony on her own behalf at her trial protesting her innocence satisfied the fifth requirement under § 3553(f) to provide truthful information to the government.  This is not, however, what Congress contemplated in establishing the safety value.  Furthermore, the government argued on the record at sentencing (in response to Mr. Schlimgen's objection no. 12), that Ms. Sheeler had never cooperated with the government by providing information and that the government had done nothing to prevent her from cooperating.  Neither Ms. Sheeler nor Mr. Schlimgen objected to this statement on the record.  Their failure to object represents a more accurate, contemporaneous concession that both of them acknowledged that Ms. Sheeler did not cooperate.

under § 3B1.2(b).  She also argues that she should have been given a downward departure of two points under § 2D1.1(b)(9) for the safety valve.

Taking the last assertion first, the court notes that the safety value referenced in § 2D1.1(b)(9) requires a defendant to meet the same five criteria discussed above in connection with the § 3553(f) safety value.  See USSG § 2D1.1(b)(9) (making reference back to USSG § 5C1.2, which in turn allows a court to sentence within the guidelines range and without regard to statutory mandatory minimum sentences if the five criteria of 18 U.S.C. § 3553(f) are met).  As already discussed, Ms. Sheeler does not meet the five criteria required by § 3553(f).  Therefore, for the same reasons, she does not meet the requirement for reduction of her offense level under USSG § 2D1.1(b)(9).

Regarding Ms. Sheeler's other argument, section 3B1.2 provides as follows:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

See USSG § 3B1.2.

Here, again, Ms. Sheeler's arguments run up against the immutibility of the mandatory minimum sentence she faced.  Assuming that Ms. Sheeler's

26

argument prevails that she really qualified for the four-level reduction under part (a) above instead of the two-level reduction she actually received under part (b), her USSG range sentence would have been 46 to 57 months (using a Criminal History Category of II). The district court would have still been required to impose the mandatory minimum sentence of 60 months required by 21 U.S.C. § 841, which is exactly the sentence she received. Therefore, it would have been fruitless for Mr. Schlimgen to have raised the issue of the interpretation of USSG § 3B1.2 on appeal–Ms. Sheeler would have received the same sentence. Since Ms. Sheeler cannot show she was prejudiced by Mr. Schlimgen's failure to raise this issue on appeal, she cannot prevail on this claim.

## I.   Ground Eight–Ineffective Assistance of Counsel from Both Mr. Hanson and Mr. Schlimgen

### 1.   Mr. Schlimgen

Ms. Sheeler's complaints about Mr. Schlimgen's performance have all been covered in the above discussion. As to each of the issues discussed above, Ms. Sheeler alleges that Mr. Schlimgen was ineffective for failing to raise the issues in Ms. Sheeler's direct appeal. For the reasons discussed above, the court finds that Ms. Sheeler has failed to establish either a departure from the professional standard of care by Mr. Schlimgen or prejudice as required under Strictland. For those reasons, the court denies relief on any allegation related to Mr. Schlimgen's performance.

27

### 2.   Mr. Hanson

The first issue raised by Ms. Sheeler is that Mr. Hanson was ineffective because he allowed the Western Union wire transfer documents into evidence. This issue has already been discussed and disposed of above.  Because Ms. Sheeler cannot show prejudice, she is not entitled to prevail on this claim.

Ms. Sheeler also faults Ms. Hanson for failing to submit a letter into evidence from Ken Heiser.  Ms. Sheeler appended this letter to her motion to vacate.  The court has reviewed the letter and fails to see how the letter could have affected the outcome of the trial.  In sum, the letter simply sets forth the fact that Mr. Heiser is being held legally accountable for drug trafficking, and that he perceives unfairness in the fact that a certain other drug trafficker who Mr. Heiser perceived to be more culpable would end up serving less time in prison than he.  The court concludes that Ms. Sheeler has failed to show prejudice with regard to Mr. Hanson's failure to introduce this piece of evidence at trial.

Ms. Sheeler argues that Mr. Hanson was ineffective as her lawyer because he did not put any effort into defending Ms. Sheeler once she told him she would not plead guilty.  However, Ms. Sheeler is required to show what specific decisions Mr. Hanson made that deprived her of effective assistance of counsel.  This omnibus allegation without specifics is not sufficient to show

28

either that Mr. Hanson fell below the standard of care or that his defalcation prejudiced her.

Ms. Sheeler argues that Mr. Hanson was ineffective because he did not object to the government's motion *in limine* that no reference be made to penalty or punishment. Undoubtedly, Mr. Hanson made no objection because it is so well-established that it is irrelevant, even reversible error, to introduce information to a federal jury about a defendant's punishment. See <u>United States v. Thomas</u>, 895 F.2d 1198, 1200 (8th Cir. 1990). The government's motion was legally indisputable and no error was committed by Mr. Hanson for recognizing it as such.

Finally, Ms. Sheeler also faults Mr. Hanson for failing to object to the government's motion *in limine* as to opinion evidence as to Ms. Sheeler's character, or reference to innocence or guilt. Ms. Sheeler's characterization of the government's motion is erroneous. The motion, Docket 29, does not mention character evidence. Rather, the motion simply asks for an order prohibiting any witness or lawyer from expressing an opinion as to Ms. Sheeler's guilt or innocence because such an opinion would invade the province of the jury.

Ms. Sheeler's objection to Mr. Hanson's representation of her in this regard is really two-fold. She faults him for failing to object to the government's motion *in limine*. However, she also faults him for refusing to call

29

a Mr. Antonio Gonzales as a witness who would have testified that, "to his knowledge Sheeler was not involved." The subject of Mr. Gonzales' testimony, then, would have been arguably within the purview of the government's motion *in limine.*

The government argues that Mr. Gonzales, a convicted co-conspirator, would only have provided testimony that was cumulative to Ms. Sheeler's own testimony in which she asserted her innocence. According to the government, "more of the same evidence" would not have changed the outcome of the trial. However, the court cannot reach this conclusion on the cold, hard record.

First of all, it is axiomatic that if the government may produce evidence that a defendant is "involved" in a drug conspiracy, the defendant must be equally free to introduce evidence that she was not so "involved," even if that evidence of non-involvement must be phrased carefully so as not to constitute a lay "opinion" as to the defendant's innocence. Secondly, the court cannot conclude that Mr. Gonzales' testimony would have been of no additional interest to the jury simply because Ms. Sheeler also testified that she was not involved. A third party who was a participant in the conspiracy who testifies that the defendant on trial was not involved in the conspiracy may or may not carry a great deal of weight with the jury. Much would depend on the context: how knowledgeable is the testifying witness about the workings of the

conspiracy, what is his basis for knowledge of the defendant's role, what motive does the witness have for lying?

None of this information is provided by either Ms. Sheeler or the government. Without an evidentiary hearing, the court cannot conclude that Mr. Hanson's decision not to call Mr. Gonzales was strategic or otherwise defensible. Accordingly the court will grant an evidentiary hearing on the single, very limited issue of whether Mr. Hanson was ineffective for failing to object to the government's motion *in limine* and the connected issue of failing to call Antonio Gonzales as a witness.

Because a habeas petitioner is entitled to counsel in the event an evidentiary hearing is held, the court will appoint counsel to represent Ms. Sheeler at the evidentiary hearing. <u>Green v. United States</u>, 262 F.3d 715, 716 (8th Cir. 2001); <u>see also</u> Rules Governing § 2254 Cases, Rule 8(c), 28 U.S.C.A. foll. § 2254. The hearing will be scheduled at a later date after consultation with both counsel for Ms. Sheeler and counsel for the government.

## CONCLUSION

The court recommends dismissal of Ms. Sheeler's petition for habeas relief on every ground raised by Ms. Sheeler in her petition except the issue of whether Michael Hanson was ineffective as her lawyer for failing to object to the government's motion *in limine* as to evidence of innocence and the related issue of his failure to call Antonio Gonzalez as a witness on behalf of Ms. Sheeler at

31

trial. As to this issue, the court will hold an evidentiary hearing and appoint counsel to represent Ms. Sheeler at that hearing.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated October 27, 2008.

BY THE COURT:

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE